UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHNNIE ATWELL                                                                                    PLAINTIFF

   VS.       Civil No. 2:15-cv-02023-MEF

CAROLYN W. COLVIN,                                                                           DEFENDANT
Commissioner of Social Security Administration

## MEMORANDUM OPINION

 Plaintiff, Johnnie Atwell, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I. Procedural Background:

 Plaintiff filed his application for DIB on December 28, 2012, alleging an onset date of September 1, 2011, due to pain in abdomen, chest, and groin; painful to lift and stand; shortness of breath; weakness in legs and arms; swelling of legs and ankles; numbness in extremities; and, headaches. (T. 148) Plaintiff's application was denied initially and on reconsideration. (T. 81-83, 85-86) Plaintiff then requested an administrative hearing, which was held by Administrative Law Judge ("ALJ"), Hon. Edward M. Starr, on September 13, 2013. Plaintiff was present and had a representative present.

 At the time of the hearing, Plaintiff was 60 years of age and had the equivalent of a high school education. (T. 33, 149) Plaintiff's past relevant work experience included working as a fork lift

operator from December 2004 through October 2005, an assembly worker from September 2005 through March 2006, and a plumber's apprentice from June 2006 through September 2011. (T. 150, 156)

On April 9, 2014, the ALJ found Plaintiff's cardiovascular disorders (aortic aneurysm, post-surgical repair; and, hypertension) severe. (T. 18) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of his impairments, the ALJ concluded Plaintiff was not disabled from September 1, 2011, through the date of his Decision issued April 9, 2014. The ALJ determined Plaintiff had the RFC to perform light work. Plaintiff could frequently lift and/or carry ten pounds and occasionally twenty pounds, sit for a total of six hours in an eight hour workday, and stand and/or walk for a total of six hours in an eight hour workday. He could occasionally climb, balance, crawl, kneel, stoop, and crouch. (T. 19)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on December 23, 2014. (T. 1-5) Plaintiff then filed this action on February 2, 2015. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 6) Both parties have filed briefs (Doc. 8 and 9), and the case is ready for decision.

## II.   Applicable Law:

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial

evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III.     Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that the Plaintiff had not been disabled from the onset date of September 1, 2011, through the date of the ALJ's Decision issued April 9, 2014. Plaintiff raises four issues on appeal, which can be summarized as: (A) the ALJ failed to fully and fairly develop the record; (B) the ALJ erred in his credibility analysis; (C) the ALJ erred in his RFC determination; and, (C) the ALJ erred in step-four of his analysis. (Doc. 8, pp. 9-16) The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### RFC Determination:

Plaintiff argues the ALJ failed to incorporate both mental and physical findings of the Plaintiff's treating physician and consultative examiner in his RFC determination, and that the ALJ erred in the weight assigned to Dr. Terry L. Hoyt's examination. (Doc. 8, pp. 13-14)

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

4

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004).

August 28, 2013, Dr. Hoyt, at the request of the Plaintiff's attorney, performed a history and physical examination with functional capacity evaluation of the Plaintiff. Dr. Hoyt indicated Plaintiff had not been adequately treating his medical problems, and Dr. Hoyt was strongly concerned that Plaintiff had other medical issues that had not been addressed. (T. 268) Plaintiff had recurrent chest pain, shortness of breath, abdominal pain and claudication, excessive weakness, and ease of fatigability. (T. 268) Dr. Hoyt opined Plaintiff was at a very high risk of decompensating and suffering another catastrophic and potentially life threatening event.  Dr. Hoyt determined Plaintiff suffered from arteriosclerotic cardiovascular disease and peripheral vascular disease with further loss of leg function, which put him at high risk of suffering a heart attack or a stroke. (T. 268) Plaintiff's breathing was impaired from chronic obstructive pulmonary disease ("COPD"), and he was notably depressed. (T. 268)

Plaintiff reported mild chest pain radiating down to his left arm, neck, jaw, and teeth. The chest pain was heavy, deep, crushing, and increasing in severity. (T. 270) Plaintiff reported leg pain with increased frequency. (T. 271) Plaintiff reported recurrent congestion, cough, shortness of breath, sputum, and wheezing. He had leg pain while walking; high blood pressure; sleeping palpitations;

back problems, muscle cramps, and weakness; depression, memory loss, mood change, excessive stress, and nervousness; headaches; weakness and fatigue; and, prostate problems. (T. 271-272)

Plaintiff was awake, alert, understood questions, and responded appropriately and quickly. (T. 272) Dr. Hoyt observed Plaintiff's neck was supple; lungs were clear, no crackles, wheezes, rhonchi, stridor, or pleural rubs; however, his respirations were slightly labored. Plaintiff had symmetrical excursions, increased AP diameter, and diffused chest wall tenderness. There was an increased harshness of bronchovesicular sounds, a few scattered crackles, and panexpiratory wheezes. (T. 272) Plaintiff's cardiovascular and neurological examinations were normal; however, he had generalized lower abdominal tenderness. (T. 272) Dr. Hoyt recommended further testing; however, the Plaintiff indicated he did not have the financial resources for the testing. (T. 273)

Dr. Hoyt diagnosed Plaintiff with arterorscloeroic cardiovascular disease with peripheral vascular insufficiency, status postoperative abdominal aortic aneurysm, hypertension, COPD, and chest pain syndrome. (T. 274) His medical source statement indicated that during an eight-hour work day Plaintiff could sit for two hours and stand and walk for one hour. (T. 274) Plaintiff could continuously lift up to five pounds, frequently lift up to ten pounds, occasionally lift up to twenty pounds, and never lift over twenty pounds. (T. 274) Plaintiff could occasionally grip with both hands and was limited to pushing and pulling fifty percent of the time. (T. 275) He could not bend, squat, crawl, or climb; however, he could occasionally reach above his head, stoop, crouch, and kneel. (T. 275) Plaintiff could not tolerate exposure to unprotected heights, marked temperature changes, and to dust, fumes, and gases; be around moving machinery, and was limited to occasionally driving automotive equipment. (T. 275) Dr. Hoyt determined Plaintiff's pain was "moderate (could be tolerated but would cause marked handicap in the performance of the activity precipitating the pain)." (T. 275) Plaintiff would have unscheduled breaks, be absent more than

four days per month due to the impairments, and would need to elevate his feet periodically throughout the day. (T. 276)

On February 6, 2014, Dr. Michael R. Westbrook, state agency medical consultant, conducted a general physical examination. (T. 278) Plaintiff was a smoker of forty-five years, smoking one and one half packs per day; however, he had stopped smoking two months prior to the examination. (T. 278) Dr. Westbrook indicated there might be possible emphysema. (T. 278) Plaintiff was diagnosed with hypertension. (T. 279) Plaintiff had sharp chest pain in the left upper chest, which had been present since November 2010. (T. 279) Plaintiff had bilateral hip, knee, and t-spine pain. (T. 279) He had neuropathy in both lower legs and feet, and two headaches per month. (T. 279) Dr. Westbrook observed cyanosis in the Plaintiff's feet. (T. 280) Plaintiff's extremity exam was within normal limits. (T. 280) Dr. Westbrook observed Plaintiff had a slightly kyphotic posture, but his gait was within normal limits. (T. 281) Plaintiff was able to hold a pen and write; touch fingertips to palm; oppose thumb to fingers; pick up a coin; stand/walk without assistive devices; walk on heel and toes; squat and arise from a squatting position; and, he had a grip strength of seventy-five percent in both hands. (T. 281) Dr. Westbrook diagnosed Plaintiff with a history of abdominal aortic aneurysm post-surgical repair, arthralgia, hypertension, and neuropathy. (T. 282) Based upon his evaluation, Dr. Westbrook determined Plaintiff was moderately limited in his ability to walk, stand, sit, lift, carry handle, finger, see hear, or speak. (T. 282)

The ALJ rejected Dr. Hoyt's evaluation because Dr. Hoyt did not perform "any objective testing to support the conclusions expressed in the checklist form." (T. 21) The ALJ determined that Dr. Hoyt's findings were in conflict with other credible medical evidence of record, were not substantially supported by objective testing results, and because Dr. Hoyt was not one of Plaintiff's treating physicians, his opinion was given little weight by the ALJ. (T. 21) By contrast, the ALJ

7

gave Dr. Westbrook's opinions and findings substantial weight because his opinions were found to be generally consistent with other credible medical evidence of record, and because Dr. Westbrook "concluded that the examination showed that the claimant's medical conditions were nonsevere." (T. 21) The Court cannot find any substantial evidence to conclude that Plaintiff's medical conditions were "non-severe," and to the contrary, Dr. Westbrook even determined that Plaintiff had moderate limitations. (T. 282)

Another misstatement in the ALJ's opinion is that the "evidence d[id] not show that the claimant experienced any complications during recovery" from his surgery. (T. 20) Medical records show, however, that one of Plaintiff's cultures tested positive for staph[1], and he was treated with IV antibiotics for seven days. (T. 220)

Moreover, the ALJ indicated there was no mention of Plaintiff's neck pain, leg pain, or numbness in the extremities at his appointment with Physician's Assistant Catherine Mustain ("P.A. Mustain"). (T. 20) At an appointment with P.A. Mustain in August 2012, Plaintiff complained about leg pain, numbness, difficulty walking when his legs were stiff; a burning sensation in both legs or feet below the knee; and, pain in his abdomen, since the surgery, and it felt like something was pinching in his lower abdomen. (T. 209) In March of 2013, the Plaintiff sought treatment from P.A. Mustain and indicated he sometimes felt a sharp, pulling type of pain in his lower abdomen with he moved "different" or tried to lift something. He also felt tired or

---

[1] Staph infections are caused by staphylococcus bacteria, types of germs commonly found on the skin or in the nose of even healthy individuals. Most of the time, these bacteria cause no problems or result in relatively minor skin infections. But staph infections can turn deadly if the bacteria invade deeper into your body, entering your bloodstream, joints, bones, lungs or heart. Staph infections can range from minor skin problems to endocarditis, a life-threatening infection of the inner lining of your heart (endocardium). As a result, signs and symptoms of staph infections vary widely, depending on the location and severity of the infection. http://www.mayoclinic.org/diseases-conditions/staph-infections/basics/definition/con-20031418 (last visited October 23, 2015)

heaviness in his legs on both sides. (T. 233) Plaintiff had neck pain in the trapezius, which increased by head movement and only lasted for a few seconds. (T. 233) Plaintiff had intermediate claudication and abdominal pain. (T. 233) Plaintiff smoked a pack of cigarettes per day. (T. 233) P.A. Mustain observed Plaintiff's abdomen was abnormal, and it had a well healed surgical scar on the left abdomen from suprapubic to epigastric area. (T. 233) Despite Plaintiff's documented complaints regarding his pain, the ALJ incorrectly indicated the symptoms mentioned above were not previously recorded in the medical evidence.

    The ALJ also indicated in his Decision that Plaintiff failed to follow the recommended course of treatment. The ALJ stated that John R. Williams, M.D. recommended workup for the neck pain, to include an MRI scan to assess neck conditions, and a referral to a gastroenterologist was offered to assess the claimant's abdominal pain, but the claimant wanted to apply for Medicaid or Medicare prior to the referrals. The ALJ commented that there was no subsequent evidence showing that the claimant pursued the referrals recommended. (T. 20) The pertinent medical record reads as follows: "he may need to be worked up for his neck complaints - may need MRI of the neck to see if he ha[d] a disc problem. I also would like to refer him to a gastroenterologist for his complaint of abdominal pain with the sharp pulling sensations [he] is having. These [maybe] only be adhesions, but need to be evaluated by a GI or IM specialist. I am also concerned about his complaint of leg heaviness or weakness and am concerned about the vessels in his legs. This should be evaluated by Doppler study and cardiologist. If he is able to get Medicaid or Medicare, I will be happy to refer him for these work ups." (T. 234) Plaintiff testified he sought treatment on a sliding scale. He had no income, insurance, or means of support. (T. 33).

    While a "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case," inaccuracies, incomplete

9

analyses, and unresolved conflicts of evidence can serve as a basis for remand. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000); *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992). In the case at hand, the aforementioned inaccuracies in the record require a remand. The ALJ based his RFC determination utilizing Dr. Westbrook's general physical examination, and the ALJ mis-characterized Dr. Westbrook findings in determining that Plaintiff's medical conditions were non-severe. The ALJ is required to base his Decision upon the medical evidence of record, and it is clear to the Court that he did not do so in this case. Accordingly, the Court cannot say that the ALJ's Decision is supported by substantial evidence.

On remand, the ALJ should reconsider the medical evidence in making his RFC determination and ensure that it is an accurate assessment of what the Plaintiff is capable of performing in the sometimes competitive and stressful conditions in which real people work in the real world. While the ALJ did not have the benefit of reviewing the nerve conduction test performed on September 8, 2014, the ALJ should also review and incorporate the test results into his RFC determination.

### IV.   Conclusion:

Based on the foregoing, I must reverse the decision of the ALJ and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 27th day of October, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE